**PIDGEON–THOMAS IRON COMPANY,**
**Appellant,**

**v.**

**Riley C. GARNER, Trustee of Shelby County,**
**Tennessee, et al., Appellees.**

Supreme Court of Tennessee.

May 21, 1973.

James W. McDonnell, Jr., Canada, Russell & Turner, Memphis, for appellant.

Ernest G. Kelly, Jr., Evans, Petree, Cobb & Edwards, Memphis, Cleveland Drennon, County Atty., Memphis, for appellees.

## MEMORANDUM

PER CURIAM.

Because of the importance of this case, it was brought before the Court by certiorari so that we might hear arguments and consider it. This has been done, and we are content to adopt the opinion of the Court of Appeals as the opinion of this Court. This opinion is as follows:

"The complainant taxpayer, Pidgeon-Thomas Iron Company, appeals from a decree of the Chancellor which dismissed complainant's lawsuit brought to obtain a refund of certain taxes paid under protest. The complainant claims it was wrongfully taxed under the provisions of the 1963 Local Option Revenue Act (LORA), T.C.A. §§ 67–3049 through 67–3056, as applied to Shelby County, Tennessee, by resolution of the County Court of Shelby County and approved by a vote of the people of Shelby County.

"The resolution of the County Court of Shelby County, adopted October 7, 1963, provided the local tax would be collected by the State Department of Revenue in the same manner as the state retail sales tax was collected, provided that the Department has determined that such collection of the tax is feasible and has promulgated rules and regulations governing such collection. The Department of Revenue did on November 5, 1963, file with the Secretary of State 'Rules and Regulations'

governing the collection by it of taxes due under LORA. The result is that Shelby County did adopt the Rules of the Commissioner for the collection of the tax due under LORA.

"By its original bill, and by five assignments of error in this Court, the complainant insists: (1) Rule 5, Liability for the Locally Imposed Tax,[1] as promulgated by the Commissioner is invalid wherein it imposes the local tax on any sale of tangible personal property made by a business located within the physical limits of any local government imposing a local sales tax, even though the goods are delivered to a user or consumer located within the State of Tennessee but outside the territorial limits of the taxing locality; (2) T.C.A. § 67–3050 provides that the tax levied shall not exceed $5.00 on the sale or use of any single article of personal property, and the Commissioner's Rule 6(b)[2] as applied to certain sales of fabricated articles by the complainant is violative of that statute and

is illegal and void; and (3) The complainant is entitled to a refund of taxes paid under protest.

"The statute in question, LORA, became effective March 25, 1963. The Resolution of the Shelby County Quarterly Court called for a referendum in November, 1963, the result of which was 'FOR' the tax, effective date January 1, 1964. The present lawsuit was filed on March 27, 1964. Another lawsuit, Cause No. 66621–3 R.D., was filed by the present complainant and others wherein the legality of the resolution and the referendum held thereunder was challenged, which cause was heard and appealed to the Supreme Court of Tennessee. The Supreme Court in that cause held the local tax was legally enacted in Shelby County, see: Pidgeon-Thomas Iron Co., et al v. Shelby County, et al (1965) 217 Tenn. 288, 397 S.W.2d 375. The present lawsuit was apparently held in abeyance pending the decision in the other lawsuit. Thereafter, the present lawsuit

1. "Rule 5:—Liability for the Locally Imposed Tax. (a) Dealers shall be liable for any sales tax on any sales of tangible personal property or made from any place of business within the physical limits of a local government imposing a local sales tax where delivery is made by the dealer to a user or consumer anywhere within the physical limits of the state, or to a carrier or the United States Post Office for delivery to a place within the physical limits of the state. The place where a user or consumer may take or use tangible personal property or taxable services has no bearing on whether a sales tax is due. A dealer making sales from a place of business within the physical limits of a local government imposing a local sales tax shall not be liable for any sales tax where he delivers possession of the tangible personal property or taxable services either to a place outside the physical limits of the state, or to a common carrier for delivery to a place outside the physical limits of the state, provided the transaction is bona fide, and the dealer has no reason to believe that the property or service sold is to be brought back immediately into the state for use.
(b) Out of state vendors subject to the jurisdiction of the state and making

sales of tangible personal property or taxable services to persons within the physical limits of a local government imposing a local sales tax, for use and consumption, and users and consumers within the physical limits of a local government imposing a local sales tax importing tangible personal property for use or consumption therein shall be liable for any use tax on purchase of tangible personal property and taxable services from dealers outside the state when the tax is not paid to such dealers for the local government."

2. 'Rule 6:—Maximum Local Sales Tax. (a) * * * (b) A single article of personal property shall mean that which is regarded by common understanding as a separate unit exclusive of any accessories, extra parts, etc., and is capable of a regular billing, or other obligation. Such independent units sold in sets, lots, suites, etc., at a single price shall not be considered a single article. Parts or accessories for automobiles, tractors, and other similar items that are installed at the factory and delivered with the unit as original equipment shall be treated as a part of the unit. Sales or use shall include the consideration for the lease or rental of tangible personal property.'

was heard by the Chancellor, on oral testimony, on March 30, 1966, and the matter was taken under advisement by the Chancellor. The Chancellor filed his Memorandum Opinion on May 13, 1971; the final decree was dated and filed on July 13, 1971.

"The complainant's place of business is in Shelby County, Tennessee. The complainant is engaged in business as a distributor of mill supplies, construction supplies and related items of hardware, as a steel warehouse distributor, as a fabricator of steel and other metal products, and as an erector of steel structures. Since LORA was made applicable to Shelby County, the complainant has made sales to Tennessee customers both within and without the territorial boundaries of Shelby County, Tennessee. The complainant has set out in its proof three categories of sales made, which it contends were made in the State of Tennessee but outside the territorial boundaries of Shelby County, and are therefore not subject to the local tax: (1) Sales made by its salesmen at the place of business of the customer located outside Shelby County, the order was mailed to complainant in Shelby County, the order filled by complainant and shipped by U. S. Mail or by common carrier to the customer outside of Shelby County, the salesmen did not live in Shelby County and they made no sales in Shelby County; (2) Sales made by telephone where the customer calls from his place of business outside Shelby County, the order is filled and shipped to the customer by U. S. Mail or by common carrier; and (3) 'Drop orders' where the manufacturer of an item sold by complainant to a Tennessee customer outside Shelby County, shipped the item directly to the customer and the item never physically entered Shelby County, Tennessee. In the foregoing situations the customer usually paid the freight charge, but occasionally the complainant did pay that charge; the customers were encouraged to make telephone orders from complainant by collect calls to complainant; and, if items were lost in transit the complainant would refill and ship another identical order to the customer, and the complainant made the claim against the carrier.

■ "The complainant's insistence is that the sales in each of the above categories took place outside the territorial boundaries of Shelby County, Tennessee, and the local tax is not due on those sales. The complainant argues a sale occurs where title and possession pass, and cites T.C.A. § 47–2–401(2), a portion of the Uniform Commercial Code, as authority that in each of the above situations title passed and the sale was made outside Shelby County. We do not deem it necessary to pass upon that point, unless the tax as contemplated by LORA is indeed a tax on the sale. The basic issue is whether the incidence of the tax is upon the sale, or whether it is upon the privilege of engaging in retail sales. The complainant quotes from the resolution of the County Court of Shelby County, Tennessee and from the ballot submitted to the people of Shelby County, to the effect that the governing body and the people of that county intended that the sales in the three categories noted would not be taxed locally. That argument is not persuasive because as heretofore noted the local tax was legally enacted, Pidgeon-Thomas Iron Co. v. Shelby County, supra, and we must conclude the tax will be applied as the legislature intended by its enactment of LORA; all statements in the county resolution and ballot must yield to the statute.

"By T.C.A. § 67–3050 any county or any municipality is authorized to levy a tax on those same privileges subject to the Retailers' Sales Tax Act, which privileges are exercised within such county or municipality. The statute further sets out the rate of tax allowed; the priorities of counties over municipalities; the method of collection; the procedure for a referendum; and how the proceeds shall be distributed. T.C.A. §§ 67–3050 through 67–3056. Looking therefore to the Retailers' Sales Tax Act

we find the privileges subject to taxation stated at T.C.A. § 67–3003 as follows:

'It is declared to be the legislative intent that every person *is exercising a taxable privilege* who engages in the business of selling tangible personal property at retail in this state, or who uses or consumes in this state any item or article of tangible personal property as defined in this chapter, irrespective of the ownership thereof or any tax immunity which may be enjoyed by the owner thereof, or who is the recipient of any of the things or services taxable under this chapter, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in the state any item or article of tangible personal property as defined in this chapter, or who leases or rents such property, either as lessor or lessee, within the state of Tennessee. *For the exercise of said privilege* a tax is levied as follows . . .' (Emphasis added)

"Our Supreme Court has held the Retailers' Sales Tax Act imposes a tax upon the privilege of making retail sales. Hooten v. Carson (1948) 186 Tenn. 282, 209 S.W.2d 273; Smoky Mountain Canteen Co. v. Kizer (1952) 193 Tenn. 598, 247 S.W.2d 69; Alford v. Butler (1963) 211 Tenn. 663, 367 S.W.2d 281.

■ "There is no argument in the present lawsuit but that retail sales as defined by T.C.A. § 67–3002 were made to Tennessee customers located outside Shelby County. Those sales were admittedly made by the complainant from its place of business in Shelby County, Tennessee in the exercise of its privilege in that county of selling tangible personal property at retail. That privilege is taxable under LORA, and it matters not whether the sales were technically made inside or outside of Shelby County. Had the tax been on the sale there might have been some argument on this issue. The tax, however, is clearly established by the language of the statute

and by court decisions as being on the privilege of engaging in retail sales. The actual sale is of importance in determining the amount of tax due on the privilege taxed.

■ "The complainant's insistence that the 'drop orders' are not subject to the privileges taxed under LORA has merit for those 'drop orders' made between June 1, 1968 and May 6, 1971. LORA as enacted in 1963 was amended by Chapter 488, Public Acts 1968, effective June 1, 1968 which added the following:

'Section 1 . . . (c) Any firm or business located in a County collecting local sales tax shall not collect local sales tax on merchandise sold in a County not collecting an equal local sales tax if such merchandise has not come to rest in the County in which said firm or business is located.'

"Thereafter, by Chapter 148, Public Acts 1971, effective May 6, 1971, LORA was further amended by striking in its entirety the foregoing paragraph (c) as inserted in 1968. A reasonable interpretation of the 1968 amendment above copied is that the legislature did not intend for the local tax on the privilege of selling at retail to extend to sales of merchandise which was shipped directly from the manufacturer to the complainant's customer outside Shelby County, and never came to rest in Shelby County, provided the county to which the merchandise was shipped did not collect an equal local sales tax. Those sales, if any, made during the period noted, are not subject to the Shelby County local sales tax and the complainant's assignments of error are sustained to that extent. Otherwise, the Commissioner's Rule 5, Liability for the Locally Imposed Tax, is legal and within the contemplation of the legislative intent by its enactment of LORA, with the result that the three categories of sales heretofore noted are subject to the local tax.

■ "The complainant insists that the $5.00 maximum tax (This maximum may

now be $7.50) collectible on the sale of any single article of personal property as set out in T.C.A. § 67–3050, is applicable to certain sales by it of fabricated steel structures. The legislature did not in LORA define a 'single article of personal property.' The Commissioner by Rule 6(b) did define a single article of personal property and the defendants contend that definition does not permit the application of the $5.00 maximum tax as contemplated by T.C.A. § 67–3050.

"The record reveals the complainant in its metal fabricating business does assemble on order various steel objects, structures and forms. Some sample sales made by complainant since January 1, 1964, were (1) a fabricated steel dome for a school building at Hendersonville, Tennessee, sale price $30,887.50; (2) a fabricated steel bridge for Expressway 1–55 over the Illinois Central Railroad in Shelby County, sale price $44,750.00; (3) a structural steel frame for a warehouse addition for Robins & Myers, Hunter Fan Division in Memphis, sale price $72,000.00; (4) a structural steel form for a concrete bridge for a highway in Hardeman County, Tennessee; (5) a steel tower for the Waterfield Grain Company of Union City, Tennessee, sale price $3,500.00. These sales were proven as representative of sales made by the complainant in its metal fabricating business.

"In each of the above situations, except the steel tower for the Waterfield Grain Company, the customer furnished the complainant a design for a particular structure; shop drawings were made; the complainant contracted to fabricate the structure for a single price for the completed item; the complainant ordered the component parts from manufacturers and did cut, shape, form and assemble the completed structure as contracted. The structure would of necessity have to be dismantled at complainant's place of business, and shipped to the site and erected. The structures were custom ordered and custom made for a particular purpose; if they were not used for the purpose for which they were designed and built, they would have scrap value only. The steel tower for Waterfield Grain Company differed only in that the component parts used to assemble the tower were taken from the complainant's stock; and the complainant designed this tower for the customer. All other aspects of the steel tower fabrication and sale were the same as outlined for the other structures.

"The complainant insists the local tax it must collect on the sale of these fabricated structures is limited to $5.00 on each sale; the defendants contend the tax is applicable to the sale price. We first note that Shelby County under LORA can tax the same privileges taxable by the State under the Retailers' Sales Tax Act. By Chapter 242, Public Acts 1955, the legislature amended the Retailers' Sales Tax Act to provide for a tax on the privilege of using or consuming any tangible personal property in Tennessee. T.C.A. § 67–3003, supra. The question before us is whether the complainant in the fabrication and erection of the steel structures noted was exercising the privilege of engaging in retail sales, or was the complainant exercising the privilege of using tangible personal property in Tennessee?

"Our Supreme Court in Young Sales Corporation v. Benson (1970), 224 Tenn. 88, 450 S.W.2d 574, stated: 'Subject to certain exceptions, it is a taxable privilege to use or consume any tangible personal property in Tennessee.' With that ruling in mind we look to the statutes for a definition of 'use.' T.C.A. § 67–3002(h) defines 'use' as follows:

'(h) "Use" means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, except that *it shall not include the sale at retail* of that property in the regular course of business.' (Emphasis added)

"T.C.A. § 67–3002(c)2, further defines that to which the term 'use' *shall not apply*, and provides in part:

'2. The terms "sale at retail," "use," "storage," and "consumption" shall not include the sale, use, storage or consumption of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product, or are used in fabricating, converting, or processing such materials or parts thereof, and . . . .' (Emphasis added).

"In the light of the above statutes, we note the complainant has exercised ownership over tangible personal property, and the complainant has used that property as component parts of a finished product constructed by the complainant. The issue is, however, has the complainant exercised ownership over the property for the purpose of 'sale at retail of that property in the regular course of business' as contemplated in T.C.A. § 67–3002(h) or has the complainant used 'industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale' as contemplated by T.C.A. § 67–3002(c)2.

"We must conclude, under the facts, that the complainant as a fabricator of steel structures is not a *seller at retail* of the tangible personal property incorporated into the fabricated steel structure, and neither was that property converted into the steel structure for *resale*; but the complainant was engaged in the business of buying materials which it *used* in the fabrication and erection of the steel structures it had previously contracted to deliver to the customer. See and compare: Townsend Electric Co. v. Evans (1952) 193 Tenn. 536, 246 S.W.2d 967; John W. McDougall Company v. Atkins (1957) 201 Tenn. 589, 301 S.W.2d 335; S. M. Lawrence Company v. MacFarland (1962) 210 Tenn. 100, 355 S.W.2d 100.

"We conclude the complainant in its steel fabricating business herein described is liable under LORA for the tax therein imposed upon the privilege of using items of tangible personal property in Tennessee. This tax is to be determined under the provisions of T.C.A. § 67–3003(b), subject to the application of the $5.00 tax limitation as set out in LORA, upon any single article of personal property used in the fabrication of the steel structures referred to.

■ "This cause must be remanded for such further proceedings as are necessary in order to determine the tax liability of the complainant after the $5.00 maximum use tax provision of LORA has been applied to the single articles of personal property so used by the complainant. Under this record we cannot say that Rule 6(b) as promulgated by the Commissioner is invalid, because that rule has not yet been applied to the tax liability of the complainant. It is first the duty of the trial court to rule on the applicability of the Rules to the factual situation presented; the jurisdiction of this Court is appellate only. T.C.A. § 16–408.

■ "The defendants raise the issue that the complainant has not proceeded according to law in the present lawsuit seeking a refund of taxes paid under protest. LORA makes T.C.A. §§ 67–2303 through 67–2305 the controlling statutes for actions of this nature. Those statutes provide a remedy for the taxpayer confronted with an unjust or illegal assessment. Where the State's fiscal agents make an erroneous or illegal charge and require the taxpayer to pay more than the law authorizes them to collect, the foregoing statutes provide the remedy. Where the levy is in part unauthorized by law, the taxpayer may pay the tax under protest and recover to the extent of the illegal exaction. Bank of Commerce & Trust Co. v. Senter (1923) 149 Tenn. 569, 260 S.W. 144.

■ "The record reveals the County Court designated the county trustee the of-

ficer upon whom suits of this nature could be served. The complainant made its first payment to the Commissioner under the provisions of LORA on February 28, 1964. This lawsuit was filed on March 27, 1964, within the thirty days after payment rule as then required by T.C.A. § 67–2305. All payments made to the Commissioner have been by check bearing the notation 'Paid under Protest'. We hold the issuance of the Rules by the Commissioner was the taking of steps by that official to collect the tax from the complainant. The complainant paid the tax under protest as allowed by T.C.A. § 67–2303, and it has properly instituted this lawsuit as allowed by T.C.A. § 67–2303, and it has properly instituted this lawsuit as allowed by T.C.A. § 67–2305.

"It results this lawsuit is remanded to the Chancery Court of Shelby County, Tennessee for such further proceedings as necessary to determine (1) The amount of tax illegally collected from the complainant, if any, by the failure to apply Section 1(c) of Chapter 488, Public Acts 1968, during the period of time from June 1, 1968 to May 6, 1971; (2) Whether the complainant is entitled to a refund when its tax liability is properly computed as a 'use' tax on the materials used in the fabrication of the steel structures noted and others of a similar nature; and (3) For a judgment against Shelby County, Tennessee for any amounts found due to the complainant under (1) and (2) above plus interest at six percent from the date of the illegal collection to the date the judgment is paid. The cost of this appeal is adjudged one-half against the complainant and one-half against Shelby County. The cost in the Chancery Court to be there adjudged.

MATHERNE, J.

CARNEY, P. J.

NEARN, J."

The case is remanded in accordance with the opinion, for the purposes therein mentioned.